ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2011 SEP 16 P 12: 53

CLERK _____
SO. DIST. OF GA.

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| RANDALL BINGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 311-019 |
| | ) | |
| BRIAN OWENS, Commissioner of the | ) | |
| Georgia Department of Corrections, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff, an inmate at Johnson State Prison ("JSP") in Wrightsville, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983 in the Northern District of Georgia. (Doc. no. 1.) Plaintiff was granted permission to proceed *in forma pauperis* ("IFP") and ordered to amend his complaint because the 20-page complaint accompanied by 107 pages of exhibits did not comply with the requirements of Fed. R. Civ. P. 8. (Doc. nos. 4, 5.) Plaintiff filed a motion to change venue (doc. no. 7), following which he submitted his first amended complaint (doc. no. 8). Because Plaintiff's first amended complaint challenged the conditions at JSP, Plaintiff's entire case was transferred to the Southern District of Georgia. (Doc. no. 11.)

Because he is proceeding IFP, Plaintiff's pleadings must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings

drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

Accordingly, the Court reviewed Plaintiff's first amended complaint in conformity with the IFP statute. The Court concluded that Plaintiff's first amended complaint again fell short of the applicable pleading standards. (Doc. no. 16.) However, in light of his *pro se* status, the Court found it appropriate to give him an additional opportunity to cure his pleading deficiencies, and therefore directed him to file a second amended complaint. (Id.). Plaintiff has submitted a second amended complaint in compliance with the Court's directive (doc. no. 17), and it is this document that the Court will now screen.[1]

## I. SCREENING OF SECOND AMENDED COMPLAINT

### A. Background

Plaintiff names the following Defendants in his second amended complaint: (1) Brian Owens, Commissioner of the Georgia Department of Corrections ("GDOC"); (2) Jose Morales, Warden of JSP; (3) Robert Spaulding, Mental Health Director at JSP; (4) Barry Henderson, a physician at JSP; (5) Tim Jones, the Deputy Warden of Care and Treatment at JSP; (6) Keith Morris, the Grievance Coordinator at JSP; (7) Gail Powell, the

---

[1] In a simultaneously issued Order, the Court has denied a motion to amend filed by Plaintiff subsequent to the filing of his second amended complaint. Therefore, his second amended complaint is the only document subject to screening.

Health Service Administrator at JSP; (8) Sharon Lewis, Medical Director at the GDOC; (9) Donald Adams, a GDOC official; (10) Annettia Toby, the Deputy Warden of Security at GDOC; and (11) Ernest Gillis,[2] a Mental Health Counselor at JSP. (Doc. no. 17, pp. 1, 4, 5, 11.)

Plaintiff alleges that he was taken to the JSP medical unit some time before May of 2010 because of a broken toe, where he was seen by Defendant Henderson. (Doc. no. 17, p. 5.) According to Plaintiff, Defendant Henderson began to interrogate him about another inmate, and when he refused to cooperate, Defendant Henderson refused to treat his broken toe and threatened to remove all of Plaintiff's medical profiles. (Id. at 5.) Plaintiff asserts that Defendants Powell, Morales, and Lewis failed to address this issue in response to Plaintiff's grievances. (Id.)

Plaintiff further avers that Defendants Morales and Jones, through their enforcement of GDOC Standard Operating Procedure IIB01-0011, endanger Plaintiff's safety by requiring him to shave with clippers that are also used by "diseased" prisoners who "have open cuts on their face and head." (Id. at 7.) Plaintiff similarly alleges that the laundry procedure mandated by Defendants Toby, Jones, and Morales endangers his health by placing him at a high risk of staphylococcal infections. (Id. at 10.) Plaintiff states that his clothes are

---

[2]Although Defendant neglects to include Defendant Gillis in the caption of his second amended complaint, he indicates an intent to name him as a Defendant in the body of the complaint. (See doc. no. 17, pp. 5, 11.) Thus, as it appears that Plaintiff inadvertently omitted Defendant Gillis's name from the caption, the Court has included him as a named Defendant.

washed in a machine along with the dirty clothes of all 96 of the other mentally ill inmates in his unit, a significant portion of which are covered in feces and other filth. (Id.) Plaintiff reports that he has contracted staph infections as a result of this laundry procedure on two previous occasions, and that he remains at risk for future infections. (Id.)

In addition, Plaintiff complains that because he is a mentally ill inmate, he is denied permission to buy a variety of items from the inmate store, including clean razors. (Id.) Plaintiff also complains that he, along with other mentally ill inmates, are denied equal access to the prison grievance process. (Id. at 8.) In particular, Plaintiff claims that the counselors assigned to handle grievances submitted by mentally ill inmates are inadequately trained in grievance policy and procedures. (Id.) Plaintiff asserts that Defendants Morales, Spaulding, Jones, Morris, and Adams are responsible for this deficiency in the grievance system, as each of them are aware of the problem and have some responsibility for handling grievances submitted by mentally ill inmates. (Id.) Similarly, Plaintiff asserts that because he is mentally ill, he is unfairly excluded from institutional programs, such as faith-based and rehabilitation programs available to other inmates. (Id. at 11.)

Plaintiff claims that Defendant Gillis, his counselor, threatened to transfer Plaintiff to a different prison if Plaintiff did not take action to have his prisoner classification level reduced to "level two." (Id. at 11.) Plaintiff avers that his counselor made this threat because he does not believe that Plaintiff is mentally ill; Plaintiff also maintains that such transfer may result in an assignment to prison where one of his inmate enemies is housed, which

4

could place him in danger. (Id.)

Plaintiff additionally alleges that Defendants Morales, Spaulding, Toby, and Jones deprive Plaintiff of sleep by requiring that he stand up for prisoner "counts" at various times during the day and night. (Id. at 12.) Plaintiff further argues that these "stand-up counts" put his safety at risk in that he is "forced to leave his cell door opened leaving [him] at risk and vulnerable . . . ." (Id.)

### B.    Discussion

#### 1.    Defendants Not Named In Second Amended Complaint

In the Court's Order directing Plaintiff to amend his first amended complaint, he was warned that his amended complaint would supersede his previously filed pleadings. (Doc. no. 16, p. 6) (citing Malowney v. Federal Collection Deposit Group, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994)); see also Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007).) Plaintiff was also specifically told that he must name all Defendants in the caption and the body of the second amended complaint. (Id.) Upon review of the second amended complaint, the Court finds that Plaintiff no longer names the following Defendants as parties to the lawsuit: (1) Stephanie McClain; (2) the GDOC; (3) Boyd Anderson; (4) Miss Bennett; (5) Keri Walker; and (6) the Johnson State Prison Classification Committee.

As Plaintiff fails to name in the caption or describe in the body of the second amended complaint any actions taken by these Defendants, they should be dismissed from

5

this lawsuit.

## 2.    Claims Subject to Dismissal Under 28 U.S.C. § 1915(g)

In order to proceed IFP in a civil action in federal court, an incarcerated litigant must

comply with the mandates of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-

134, §§ 801-810, 110 Stat. 1321 (1996).  28 U.S.C. § 1915(g) of the PLRA provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil
> action or proceeding under this section if the prisoner has, on 3 or more prior
> occasions, while incarcerated or detained in any facility, brought an action or
> appeal in a court of the United States that was dismissed on the grounds that
> it is frivolous, malicious, or fails to state a claim upon which relief may be
> granted, unless the prisoner is under imminent danger of serious physical
> injury.[3]

The Eleventh Circuit concluded that § 1915(g) does not violate an inmate's right to access

to the courts, the doctrine of separation of powers, an inmate's right to due process of law,

or an inmate's right to equal protection.  Accordingly, the court upheld the constitutionality

of § 1915(g).  Rivera v. Allin, 144 F.3d 719, 721-27 (11th Cir. 1998), *abrogated on other*

*grounds by* Jones v. Bock, 549 U.S. 199 (2007).

Plaintiff's history of filings reveals that he has brought at least three cases or appeals

that were dismissed for being frivolous or for failing to state a claim upon which relief may

be granted:  (1) Bingham v. Perdue, No. 08-16945-D (11th Cir. Feb. 17, 2009) (appeal

---

[3]The Eleventh Circuit noted that "[t]his provision of the PLRA, commonly known
as the three strikes provision, requires frequent filer prisoners to prepay the entire filing fee
before federal courts may consider their lawsuits and appeals."  Rivera v. Allin, 144 F.3d
719, 723 (11th Cir. 1998) (internal citations omitted), *abrogated on other grounds by* Jones
v. Bock, 549 U.S. 199 (2007).

dismissed as frivolous); (2) <u>Bingham v. Perdue</u>, Civil Action No. 1:08-CV-151, doc. no. 13

(M.D. Ga. Nov. 24, 2008) (dismissing § 1983 action as frivolous pursuant to initial

screening); (3) <u>Bingham v. Donald</u>, Civil Action No. 5:08-cv-246, doc. no. 114 (M.D. Ga.

March 18, 2010) (dismissing § 1983 action for failure to exhaust administrative remedies).

In each of these cases, Plaintiff brought a civil action or appeal that was dismissed

for being frivolous or for failing to state a claim.[4]  Therefore, these previously dismissed

cases qualify as strikes under § 1915(g).  As Plaintiff has three strikes under § 1915(g), he

cannot proceed with the claims he attempts to assert in the present case unless such claims

qualify for the "imminent danger of serious physical injury" exception to § 1915(g).[5]

In order to come within the imminent danger exception, a prisoner must be in

imminent danger at the time he files suit in district court, not at the time of the alleged

---

[4]The Eleventh Circuit has held that "a claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted." <u>Rivera v. Allin</u>, 144 F.3d at 731.

[5]Plaintiff was granted permission to proceed IFP prior to his case being transferred to this Court, without comment as to whether Plaintiff should be barred from proceeding IFP under the three strikes rule of § 1915(g). (Doc. no. 4.)  Nevertheless, it is appropriate at this juncture for the Court to determine whether Plaintiff's claims meet the imminent danger exception such that he should be permitted to proceed with them IFP.  <u>See</u> <u>Butler v. Donald</u>, CV 105-1874-CAM, doc. no. 14 (N.D. Ga. July 14, 2006) (vacating grant of IFP status based on reconsideration of the plaintiff's claim of imminent danger of serious physical injury); <u>see also</u> <u>Joiner v. Mason</u>, No. 209-CV-243, 2011 U.S. Dist. LEXIS 55580, at *11 (M.D. Ala. May 23, 2011) (noting that plaintiff had been allowed to proceed only with claims that met imminent danger exception); <u>Lester v. Burnside</u>, No. 5:09-CV-412, 2009 U.S. Dist. LEXIS 123822, at *3 n.1 (M.D. Ga. Dec. 28, 2009) (allowing plaintiff subject to three strikes rule to proceed IFP with regard to claims that met imminent danger exception but not with respect to other claims that failed to qualify for that exception).

incident that serves as the basis for the complaint. Medberry v. Butler, 185 F.3d 1189, 1193

(11th Cir. 1999). In addition, the Court looks to Brown v. Johnson, 387 F.3d 1344 (11th Cir.

2004), for guidance on the issue of what constitutes "imminent danger of serious physical

injury." In Brown, the plaintiff alleged a total withdrawal of treatment for serious diseases,

as a result of which he suffered from severe ongoing complications; thus, the Eleventh

Circuit concluded that, viewed together, the afflictions of which the plaintiff complained

(including his HIV and hepatitis), and the alleged danger of more serious afflictions if he was

not treated, constituted imminent danger of serious physical injury. Id. at 1350.

Unlike in Brown, the majority of the claims that Plaintiff has attempted to assert do

not fall within the imminent danger exception to the three strikes rule of § 1915(g).

Plaintiff's due process claims against Defendants Powell, Morales, Lewis, Spaulding, Jones,

Morris, and Adams regarding the purported mishandling of grievances at JSP involve no

danger of physical injury.[6] Likewise, Plaintiff fails to satisfy the imminent danger exception

with his claims regarding discrimination he allegedly suffers as a mentally ill inmate, which

are ostensibly brought pursuant to the equal protection clause of the Fourteenth Amendment

and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (See doc. no.

17, pp. 5, 7, 11.)

Plaintiff's attempted Eighth Amendment claim against Defendant Henderson for

---

[6]Moreover, as explained below, these grievance-related allegations fail to state a claim for a violation of Plaintiff's due process rights because prisoners do not have a liberty interest in access to a prison grievance procedure. See infra note 7.

failing to treat his broken toe also fails to qualify for the imminent danger exception. (See id. at 5.) As noted above, the relevant time period with regard to the imminent danger exception is the time when Plaintiff commences suit, rather than the time of the alleged incident. Medberry, 185 F.3d at 1193. It is apparent from the face of Plaintiff's second amended complaint that the alleged incident involving Defendant Henderson occurred at some point prior to May of 2010, at least six months prior to the date he filed the instant case, and there is no allegation of any ongoing injury or risk of injury related to this claim at the time Plaintiff filed his original complaint in this case in November of 2010. (See doc. no. 17, p. 5.) Therefore, the Court finds that the claim Plaintiff attempts to assert against Defendant Henderson cannot proceed under the imminent danger exception.

Plaintiff also fails to qualify for the imminent danger exception with regard to the claim he attempts to assert against Defendant Gillis for threatening to transfer him. In contrast to the claim at issue in Brown, Plaintiff merely speculates, based on a purported threat by Defendant Gillis, that he *might* be transferred to a different prison, which *might* result in an altercation with an inmate at his new prison. (See id. at 11.) The general and speculative nature of this allegation precludes application of the imminent danger exception. Cf. Brown, 387 F.3d at 1350 (allegations of serious complications following total withdrawal of treatment for serious disease sufficient for imminent danger). The same reasoning applies to Plaintiff's allegation that he is placed at risk by having to leave his cell door open during prisoner counts, which he argues leaves him vulnerable to a *possible* attack by other inmates.

9

(See doc. no. 17, p. 12.) Plaintiff similarly fails to set forth allegations that meet the imminent danger exception with his allegation that the occasional requirement to stand up during the night for prisoner counts causes him to lose sleep; with regard to this attempted claim, Plaintiff alleges that the counting procedure generally causes him mental stress and sleep deprivation, but does not provide allegations that demonstrate risk of a serious, physical injury. (Compare id., with Brown, 387 F.3d at 1350.)

In sum, the Court finds that Plaintiff is subject to the three strikes provision of § 1915(g) and that he has failed to meet the imminent danger exception with respect to his due process grievance procedure claims; his discrimination-based claims under the ADA and equal protection clause; his Eighth Amendment medical claim against Defendant Henderson; his claim against Defendant Gillis regarding the alleged threat of transfer; and his Eighth Amendment claim based on the prisoner count procedure at JSP. These claims should therefore be dismissed without prejudice. If Plaintiff wishes to proceed with these claims, he must bring them in a new complaint, and must submit the full filing fee. Dupree v. Palmer, 284 F.3d 1234, 1236 (11th Cir. 2002) (*per curiam*). Moreover, as a result of the dismissal of these claims, Defendants Spaulding, Henderson, Morris, Powell, Lewis, Owens, Gillis, and Adams should be dismissed from this case.

## II. MOTION FOR DECLARATORY JUDGMENT

The Court will also take this opportunity to address Plaintiff's "Motion Seeking Declaratory Judgment . . . ." (Doc. no. 18.) In this motion, Plaintiff appears to seek

10

preliminary injunctive declaratory and injunctive relief regarding his due process grievance procedure claims. (See id.) Because such claims are subject to dismissal for the reasons discussed above, this motion should be **DENIED**.[7]

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the following claims asserted by Plaintiff be **DISMISSED** without prejudice: his due process grievance procedure claims; his discrimination-based claims under the ADA and equal protection clause; his Eighth Amendment medical claim against Defendant Henderson; his claim against Defendant Gillis regarding the alleged threat of transfer; and his Eighth Amendment claim based on the prisoner count procedure at JSP. If Plaintiff wishes to bring these claims, he must do so in a new complaint, with regard to which he must submit the entire filing fee. Dupree, 284 F.3d at 1236. The Court also **REPORTS** and **RECOMMENDS** that the following Defendants be **DISMISSED** from this case: Defendants McClain, GDOC, Anderson, Bennett, Walker, Johnson State Prison Classification Committee, Spaulding, Henderson, Morris, Powell, Lewis, Owens, Gillis, and

---

[7]Notably, in a separate case brought by Plaintiff, the Eleventh Circuit recently held that "an inmate has no constitutionally-protected liberty interest in access to [a prison grievance] procedure." Bingham v. Thomas, ___ F.3d ___, 2011 U.S. App. LEXIS 18293, at *11-12 (11th Cir. Sept. 2, 2011). Therefore, Plaintiff's "Motion Seeking Declaratory Judgment," along with his due process grievance procedure claims, are without merit and would not provide any basis for relief even if the Court had not rejected them for the reasons discussed above.

11

Adams.[8]  Finally, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's "Motion

Seeking Declaratory Judgment" be **DENIED**.  (Doc. no. 18.)

SO REPORTED and RECOMMENDED this 16th day of September, 2011, at

Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[8]In a simultaneously filed Order, the Court has directed that service of process be effected on Defendants Morales, Jones, and Toby based on Plaintiff's Eighth Amendment claims for deliberate indifference to his safety and health.

12