# ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2012 NOV 30 A 9: 07

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

RANDALL BINGHAM,               )
                               )
        Plaintiff,             )
                               )
    v.                         )        CV 311-019
                               )
JOSE MORALES, et al.,          )
                               )
        Defendants.            )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

At the time of the events giving rise to the above-captioned case brought pursuant to

42 U.S.C. § 1983, Plaintiff was an inmate incarcerated at the Johnson State Prison ("JSP")

in Wrightsville, Georgia. Plaintiff is proceeding *pro se* and *in forma pauperis* in this case,

which is now before the Court on Defendants' motion for summary judgment. (Doc. no. 73.)

Plaintiff filed a response in opposition to Defendants' motion (doc. no. 78), along with a

"Statement of Material Facts" (doc. no. 79), a brief in support of his response (doc. no. 80),

and an "Exhibit List" containing various memos, meeting minutes, prison store documents

and receipts, grievances, and affidavits.[1]  (Doc. no. 81.)  Defendants then filed a reply to

Plaintiff's response (doc. no. 85), to which Plaintiff in turn replied (doc. no. 86). Following

that exchange, Defendants filed yet another reply (doc. no. 87), and Plaintiff accordingly

---

[1]In addition to two of his own affidavits, Plaintiff has submitted thirty-nine other affidavits given by prisoners at JSP that are dated from 2008 to 2012. The affidavits address a variety of subjects, many of which are not at issue here. The Court addresses the validity of the affidavits in greater detail below.

responded (doc. no. 88). For the reasons set forth below, the Court **REPORTS AND RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** (doc. no. 73), that a final judgment be **ENTERED** in favor of Defendants, and that this civil action be **CLOSED**.

## I.   NEWLY SUBMITTED AFFIDAVITS

### A.   Affidavits Cannot Be Excluded as a Sanction

As an initial matter, the Court will address the validity and merits of the affidavits that Plaintiff submitted with his response to Defendants' motion for summary judgment. (Doc. no. 81-2, pp. 9-49.) In addition to two affidavits of his own, Plaintiff has submitted thirty-nine previously undisclosed affidavits given to him by various inmates that concern a wide range of issues. (Id.) The affidavits are all dated between 2008 and 2012, indicating both that Plaintiff has been collecting them for a number of years and that the majority of them were thus available to be disclosed during discovery. Notably, the discovery period in this case closed on May 30, 2012 (see doc. no. 47), nearly seven weeks prior to Plaintiff submitting the affidavits in question (see doc. no. 81-2). Defendants argue that, because they specifically requested during the discovery period that Plaintiff identify "any individuals [he believed] to have knowledge of unsanitary procedures or actions in the handling of inmate laundry or clipper shaves of inmates" as well as "any individuals [he knew or believed] to have suffered a [staph] infection or other medical condition as a result of procedures or actions relating to the inmate barbershop or laundry," Plaintiff's claims should be dismissed or, alternatively, his affidavits excluded. (Doc. no. 85, pp. 4-5.) In support of their argument, Defendants point to the fact that Plaintiff refused to comply with their requests or

2

with discovery generally – and, specifically, that he failed to previously identify the individuals who have given the newly submitted affidavits[2] – and instead filed a motion asserting that he would not respond any further to the District Court or the Assistant Attorney General until he was provided with a table and chair in his cell. (See doc. no. 64.) Defendants argue that, as a sanction, Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 41(b), or that the newly submitted affidavits should be excluded pursuant to Fed. R. Civ. P. 37(c).

However, Defendants' reliance on the above-stated authorities is misguided. First, although it is a true statement that, pursuant to Rule 41(b), the Eleventh Circuit has held that a district court "may dismiss a claim if the plaintiff fails to . . . comply with a court order," see Equity Lifestyle Prop., Inc. v. Florida Mowing and Landscape Serv., Inc., 556 F.3d 1232, 1240 (11th Cir. 2009), such is not the case here: as Defendants acknowledge, the Court simply *warned* Plaintiff that his failure to cooperate with discovery might result in severe sanctions (see doc. no. 66, p. 7); importantly, it did not directly order Plaintiff to comply with

---

[2]Although Plaintiff makes much of the fact that a certain number of affidavits were included with his original complaint (see generally doc. nos. 1-2, 86), the Court explained to Plaintiff when it directed him to file an amended complaint that the amended complaint would supersede his original complaint in its entirety (see doc. no. 5, p. 2). Moreover, the fact remains that Defendants were served only with the amended complaint, and thus would not have been made aware – nor have had any reason to be made aware – of the affidavits included in the original complaint. Finally, the Court notes that the newly submitted affidavits, while duplicative to some extent of those included with the original complaint, are considerably more numerous, and, as pointed out by Defendants (see doc. no. 87, p. 4), were given by a number of previously unidentified inmates. (Compare doc. no. 1-2, pp. 2-21, with doc. no. 81-2, pp. 9-49.)

a specific discovery request.[3] Moreover, although Rule 37(c) prohibits the use of information or witnesses that should have been provided pursuant to Rule 26(a) or (e) in response to a motion, Rule 26(a)(1)(B)(iv) exempts *pro se* plaintiffs in the custody of a state – like Plaintiff here, who is in the custody of the state of Georgia – from initial disclosures under Rule 26(a). Rule 26(e), similarly, concerns the supplementation of disclosures under Rule 26(a) and is likewise inapplicable. Given that Defendants have not shown any authority for excluding outright Plaintiff's newly submitted affidavits as a sanction, the Court declines to do so on that ground.

### B. Affidavits Are Not Properly Sworn or Have No Probative Value

First, the Court notes that a significant number of the affidavits that Plaintiff has submitted fail to supply the requisite components for an affidavit or are entirely irrelevant to the claims at issue, or both. Although 28 U.S.C. § 1746 requires that an affidavit executed within the United States state in particular language that the affidavit is given under penalty of perjury, many of the affidavits here contain no such language. (See doc. no 81-2, pp. 14-17, 25, 29, 30, 36-39, 42.) Moreover, many of the affidavits concern such irrelevant issues as, for instance, the discrepancy between the kitchen menu and the food actually offered (id. at 17), the prison grievance system (id. at 43), and whether or not the opportunity to utilize the prison store is a privilege or a constitutional right (id. at 44). Accordingly, the Court declines to include such statutorily deficient or irrelevant affidavits in its analysis of Defendants' motion for summary judgment.

---

[3]Notably, Defendants did not file a motion to compel discovery following Plaintiff's refusal to comply with their requests.

A substantial portion of the remainder of Plaintiff's newly submitted affidavits proffer assertions that are merely conclusory in nature. For that reason, those affidavits will likewise be excluded from the Court's analysis of the instant motion for summary judgment. In the context of summary judgment and Rule 56(e), "an affidavit must set forth specific facts in order to have any probative value;" likewise, "conclusory allegations without specific supporting facts have no probative value." Evers v. General Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985). Here, many of the prisoners in their affidavits simply assert, without any factual basis or support whatsoever, that certain practices in the prison system generally result in health problems to the prison population, but fail to make any attempt at connecting those statements to any actual or supposed injury or to the actions of any particular Defendant. As noted, such conclusory affidavits, unsupported by facts, are devoid of probative value. Id. at 986.

The few remaining affidavits – those that are properly sworn under 28 U.S.C. § 1746 and are not conclusory in nature – will be considered in the Court's analysis of the merits of Plaintiff's claims. Three such affidavits, each of which concerns the prison laundry procedure, were given by inmates Louis Coleman, Thomas Porter, and Jerome Dunson. (See doc. no. 81-2, pp. 11, 12, 34.) Two additional affidavits that will be considered were given by Plaintiff. (Id. at 9, 42.) As noted above, the remainder of the newly submitted affidavits either fail to supply the requisite components of properly filed affidavits – and thus are not so classified – or are conclusory in nature, and the Court will accordingly exclude those affidavits from consideration. Thus, the Court will proceed to establish the factual background for this case and to address Plaintiff's claims.

## II.    FACTS

Plaintiff was incarcerated at JSP from December 30, 2008 until March 26, 2012, at which point he was transferred to Valdosta State Prison, where he currently remains. (Doc. no. 73-3 (hereinafter "Morales Aff."), ¶ 5.) Defendant Morales is currently employed by the Georgia Department of Corrections ("GDC") as the Warden of JSP, and was employed as such during Plaintiff's incarceration at JSP. (Id. ¶ 4.) Defendant Jones is currently employed by the GDC as the Deputy Warden of Care and Treatment at JSP, and was employed as such during Plaintiff's incarceration at JSP. (Doc. no. 73-4 (hereinafter "Jones Aff."), ¶ 4.) Defendant Toby is currently employed by the GDC as the Deputy Warden of Security at Telfair State Prison, but worked as the Deputy Warden of Security at JSP during Plaintiff's incarceration there. (Doc. no. 73-5 (hereinafter "Toby Aff."), ¶ 4.)

Plaintiff commenced this case in the United States District Court for the Northern District of Georgia in November 2010. (See doc. no. 1.) In March 2011, the case was transferred to the Southern District of Georgia in order to achieve proper venue. (Doc. no. 11.) In May 2011, Plaintiff filed his second amended complaint (doc. no. 17), and his sole remaining claims[4] at this point concern his safety and health while incarcerated at JSP. In particular, Plaintiff alleges that Defendants Morales and Jones acted with deliberate indifference to his health and safety by forcing him to shave using clippers that were also

---

[4]Plaintiff's other attempted claims, along with various individuals named as defendants, were dismissed when his second amended complaint was screened pursuant to 28 U.S.C. §§ 1915(e) & 1915A. (See doc. nos. 21, 29.) Moreover, because Plaintiff is considered a three-strike offender per the provisions of 28 U.S.C. § 1915(g), his remaining claims proceed only because they fall within the imminent danger exception to that statute. (See doc. no. 21, pp. 6-10.)

used by other prisoners with diseases and open cuts. (Id. at 7.) Plaintiff further alleges that Defendants Morales, Jones, and Toby acted with deliberate indifference to his health and safety by forcing him to use the prison laundry service's "unconstitutional wash procedure and dryer procedure," as a result of which Plaintiff alleges he has contracted staphylococcus ("staph") infections on two separate occasions. (Id. at 10.)

## A. Plaintiff's Barbershop Claim

While incarcerated at JSP, Plaintiff was classified as a "Mental Health Level III" inmate and accordingly housed in the prison's mental health "Supportive Living Unit" in the E-2 building. (Morales Aff. ¶¶ 6-7.) Designation as a Level III inmate indicates a "tenuous mental status" that can result in impulsive behavior, poor judgment, and a deterioration of emotional controls. (Id. ¶ 6.) Although not mandated by the GDC Standard Operating Procedures ("SOPs"), it is the practice at JSP to deny Level III inmates the use or possession of razors in an effort to "prevent suicide attempts or other self-injurious behavior." (Id. ¶ 8.) Consequently, Level III inmates receive clipper shaves by inmate orderlies that are designed to comply with the grooming standards established in GDC's SOPs. (Id. ¶ 9.) In his amended complaint, Plaintiff alleges generally that, as a result of being unable to purchase or use razors, he is forced to "shave his face with hair clippers that disease[d] prisoners use that have open cuts on their face and head." (Doc. no. 17, p. 7.)

As the Warden at JSP, Defendant Morales does not directly oversee the barbershop area, but he does perform daily walkthrough inspections to ensure compliance with the SOPs and asserts that the SOPs "do not permit unsanitary conditions" and are designed to "eliminate the spread of disease and infection." (Morales Aff. ¶¶ 11-13.) Defendant Morales

7

further asserts that, to the best of his knowledge, the barbershop SOPs are followed, and that he has no knowledge of any violations during the time of Plaintiff's incarceration. (Id. ¶ 14.) Although he is the Deputy Warden of Care and Treatment at JSP, Defendant Jones avers that he is not involved with the barbershop procedures or practices but asserts that he has no knowledge of unsanitary conditions. (Jones Aff. ¶¶ 5, 9.) While employed as the Deputy Warden of Security at JSP, Defendant Toby personally inspected the barbershop area multiple times per week and likewise asserts no knowledge of unsanitary conditions or SOP violations. (Toby Aff. ¶ 8.)

According to the materials provided in the affidavit of Demario Scott, who has been employed as JSP's sanitation officer since 2009, the SOPs governing the prison's barbershops stipulate, among various other things: that towels and cloths will be used with only one person until properly laundered; that the chair headrest will be protected by a clean towel or sheet of paper for each person; that sanitary paper neck strips will be placed around the neck of each person; that equipment will be inspected for blood or debris prior to each use; that equipment will be disinfected using specified chemicals; that clippers will be cleaned and disinfected prior to each use; and that no patron who has open lesions on their scalp, neck, or facial area will be serviced. (Doc. no. 73-7 (hereinafter "Scott Aff."), Attach. 1 (SOPs), pp. 8-9.) The SOPs further require that a designated staff member inspect the barbershop area for sanitation four times per day at varying intervals and that detailed records be kept and reported. (Id. at 10.) Notably, there was never an outbreak of any communicable disease attributable to barbershop procedures during Plaintiff's incarceration at JSP. (Powel Aff. ¶ 12.) Moreover, Plaintiff never worked as a barbershop orderly or was otherwise

employed by the barbershop while incarcerated at JSP.[5]

**B.      Plaintiff's Laundry Claim**

Plaintiff alleges that staph infections are spread amongst the JSP inmates due to the prison laundry procedures. (Doc. no. 17, p. 10.)  More specifically, he attributes the alleged spread of staph infections to inmate clothing being left inside net bags during the washing and drying processes, to the presence of inmate fecal matter on clothes that are washed, and to all inmate clothes being washed or dried simultaneously in the same machines.  (Id.)  Plaintiff further alleges that he contracted staph infections on two separate occasions as a result of the laundry service. (Id.)  Notably, according to Gail Powel, a registered nurse who has worked as the Health Services Administrator at JSP for nearly eleven years, and as supported by JSP's medical records, Plaintiff never tested positive for or was diagnosed with a staph infection while incarcerated at JSP.  (Powel Aff. ¶ 5 & Attach. 1.)  In March 2009, Plaintiff was seen in the JSP medical department for a skin lesion on his nose, and two days later he was tested specifically for MRSA, a type of staph infection.  (Id. ¶¶ 6-7 & Attach. 1, pp. 1-2.)  That test came back negative. (Id. ¶ 7 & Attach. 1, p. 3.)  Plaintiff likewise never tested positive for HIV/AIDS or any other serious communicable disease while incarcerated

_____

[5]Fed. R. Civ. Proc. 36(a)(3) establishes that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."  Here, Defendants served on Plaintiff a number of interrogatories and requests for admission (see generally doc. no. 73-9); however, rather than respond in any meaningful way, Plaintiff simply filed a motion explaining that he would not respond to any further discovery requests until a table and chair were provided to him in his cell (see doc. no. 64). Thus, the matters at issue in Defendants' unanswered discovery requests are deemed admitted.  (Doc. no. 73-9.)  The Court additionally notes that Plaintiff has not contested Defendants' assertion that he failed to respond to their requests.

9

at JSP. (Id. ¶¶ 5, 8.) As with Plaintiff's barbershop claim, during Ms. Powel's employment as Health Services Administrator at JSP, a time period that stretches over 10.5 years and includes the duration of Plaintiff's incarceration, there has never been an outbreak of any communicable disease attributable to the handling of prison laundry. (Powel Aff. ¶¶ 4, 12.)

As Warden of JSP, Defendant Morales has knowledge of the laundry procedures and the SOPs that govern them, but, as with the barbershop, he does not directly oversee the laundry area. (Morales Aff. ¶ 12.) He does, however, conduct daily walkthrough inspections of the laundry facilities to ensure compliance with the SOPs, and asserts no knowledge of SOP violations during Plaintiff's incarceration. (Id. ¶¶ 13, 14.) As Deputy Warden of Care and Treatment at JSP, Defendant Jones is not involved with the laundry procedures or practices, but asserts that he has never subjected Plaintiff to unsanitary conditions in the laundry area and that he does not have any knowledge of unsanitary conditions in the laundry area. (Jones Aff. ¶¶ 5, 9.) Defendant Toby expresses no knowledge of or involvement with JSP's laundry procedures. (See generally Toby Aff.)

According to Jamie Clark, who is the Deputy Warden of Administration at JSP and who oversees the prison's laundry process, that process is also governed by the GDC SOPs. (Doc. no. 73-6 (hereinafter "Clark Aff."), ¶ 6.) The laundry of inmates housed in the E-2 building, where Plaintiff was housed, is typically washed separately from the laundry of inmates from other dorms and buildings. (Id. ¶ 7.) In an effort to avoid human error, JSP's laundry machines are calibrated by Georgia Correctional Industries to automatically apply bleach and chemicals during each washing cycle. (Id. ¶ 8.) The laundry process is "anti-microbial" and intended to thoroughly clean soiled laundry using "mechanical agitation, heat

and chemicals;" in particular, bleach and high water temperatures in the range of 130-150 degrees are used. (Id. ¶ 9.) When an inmate or staff member engaged in the laundry process becomes aware of soiled clothing, which includes clothing that contains feces, blood, or other bodily fluids, that clothing is placed in a water-soluble bag and washed separately. (Id. ¶ 10.) The bag dissolves at a certain water temperature to assure that the laundry has been adequately sanitized, and, because the water temperature is already high enough to kill microbes, no other adjustments or special settings are required. (Id.) Notably, as admitted pursuant to Rule 36(a)(3), Plaintiff has never witnessed inmate laundry soiled with fecal matter being placed into a washing machine with other inmate laundry. (See doc. no. 73-9, p. 3.)

In Plaintiff's newly submitted affidavits, three inmates state that, while working in the JSP laundry room, they were instructed not to follow, or otherwise failed to abide by, proper washing procedures. (See doc. no. 81-2, pp. 11, 12, 34.) For instance, inmate Louis Coleman states that his supervising officer instructed him not to wash clothes for over ten minutes and that "wash soap [and] bleach would never be placed in mental health washing machines" (id. at 11); inmate Thomas Porter states that washing cycles were significantly abbreviated and that washers were overloaded (id. at 12); and inmate Jerome Dunson states that he was "never once" issued a "degradable bio-hazard 'break-away' bag" (id. at 34). Inmates Porter and Dunson additionally state that Defendant Morales was notified of the problems with the prison laundry system on numerous occasions. (Id. at 12, 34.)

11

### III.    DISCUSSION

#### A.    Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Applicable substantive law identifies which facts are material in a given case.[6] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot

---

[6] The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

meet its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to any material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B.    Merits of Plaintiff's Claims**

As noted above, Plaintiff asserts two separate claims: first, that Defendants Morales and Jones acted with deliberate indifference to his health and safety by forcing him to shave using clippers that were also used by other prisoners with diseases and open cuts; and, second, that Defendants Morales, Jones, and Toby acted with deliberate indifference to his health and safety by washing his laundry with that of the other inmates – much of which allegedly contained fecal matter – with the knowledge that doing so created a heightened risk of contracting staph infections. (Doc. no. 17, pp. 7, 10.) In support of his argument, Plaintiff alleges that he contracted staph infections on two occasions due to the laundry procedures (see doc. no. 17, p. 10) or that, in the alternative, he once had a lesion of some kind on his

nose (see doc. no. 88, p. 4). Defendants assert that Plaintiff has failed to show that the barbershop and laundry procedures at JSP posed an unreasonable risk of serious harm, that any of the named Defendants acted with deliberate indifference to Plaintiff's health or safety, or that there is a causal connection between the barbershop and laundry procedures and any injury to Plaintiff. (Doc. no. 73-2, pp. 11-18.) Defendants further assert that Plaintiff is not entitled to either injunctive or monetary relief (id. at 18-26) and that they are entitled to qualified immunity. (Id. at 26-30.)

The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement. Accordingly, a prisoner can recover under § 1983 for a violation of the Eighth Amendment if he can show that a prison official was deliberately indifferent to a substantial risk to his health or safety. Farmer, 511 U.S. at 834; Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). To prevail on such a claim, Plaintiff must make "a two-prong showing: an objective showing of a deprivation or injury that is 'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities' and a subjective showing that the official had a 'sufficiently culpable state of mind.'" Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010) (quoting Farmer, 511 U.S. at 834).

Regarding the objective prong, in order to show that he suffered an "objectively, sufficiently serious" deprivation, Plaintiff must show that Defendants subjected him to conditions that posed him a substantial risk of serious harm. Farmer, 511 U.S. at 834. As for the subjective prong, Plaintiff must demonstrate that Defendants acted with "deliberate indifference," which requires proof that Defendants disregarded an excessive risk of which they were actually aware. Id. at 833-34. Mere negligence or lack of due care is inadequate

in this regard; rather, Plaintiff must show a conscious disregard of a serious and imminent risk. Id. at 835-39; see also Goebert v. Lee County, 510 F.3d 1312, 1326-1327 (11th Cir. 2007) (noting that the subjective component requires "conduct that is more than gross negligence" (citation and punctuation omitted)); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (noting that deliberate indifference requires "more than mere negligence" and stating that courts are to look for "obduracy and wantonness, not inadvertence or error in good faith").

With these principles in mind, the Court turns its attention to the claims at issue in the instant motion.

### 1.    Barbershop Claim

As noted above, Plaintiff claims that Defendants Morales and Jones acted with deliberate indifference to his health and safety by requiring him to shave using clippers that were also used by "disease[d] prisoners. . . that have open cuts on their face and head." (Doc. no. 17, p. 7.) However, Plaintiff fails to satisfy either the objective or the subjective elements of his Eighth Amendment claim for deliberate indifference to his health and safety.

First, Plaintiff fails to establish that Defendants Morales and Jones, by requiring him to comply with JSP's practice of requiring mental health inmates to be shaved using clippers, subjected him to conditions that posed a serious risk of substantial harm. In his amended complaint, affidavits, and responses to Defendants' motion for summary judgment and replies, Plaintiff offers only conclusory and unsubstantiated allegations that the barbershop procedure is unsanitary and that the barbershop equipment is not cleaned according to the SOPs. (Doc. no. 17, p. 7; see generally doc. no. 79.) For instance, Plaintiff insists in his

15

affidavits that he "keep[s] getting staph infection[s] on [his] nose" despite evidence to the

contrary (see doc. no. 73-8 (hereinafter "Powel Aff."), ¶ 5 and Morris Aff. ¶ 5) and his own

admission pursuant to Fed. R. Civ. P. 36(a)(3),[7] and further speculates that the non-existent

infections "must come from barber's razors and from nasty laundry." (Doc. no. 81-2, p. 9.)

As discussed supra Part I.B, such conclusory affidavits, unsupported by facts, are devoid of

probative value.[8] Evers, 770 F.2d at 986. Moreover, pursuant to Fed. R. Civ. P. 36(a)(3),

it is admitted that Plaintiff has never worked as a barbershop orderly or been otherwise

employed by the barbershop while incarcerated at JSP, indicating that, although he has had

his head shaved at the prison barbershop, he has no firsthand knowledge of its procedures.

(See doc. no. 73-9, p. 3.) Finally, it is also admitted that Plaintiff has never contracted a

communicable disease nor been diagnosed with any other medical condition as a result of

receiving a clipper shave at JSP. (Id.)

In accordance with the SOPs that govern the JSP barbershop, orderlies thoroughly

clean the equipment using disinfectant chemicals between each use on an inmate. (Scott

Aff., Attach. 1, pp. 8-9.) In addition to disinfecting the equipment, the orderlies also take a

---

[7] In their "First Requests for Admissions to Plaintiff," Defendants requested that Plaintiff admit that he has "never been diagnosed with a [staph] infection while incarcerated at [JSP]." (Doc. no. 73-9, p. 3.) As noted, Plaintiff failed to respond to that request for admission or to any of Defendants' other discovery requests.

[8] The Court additionally notes that Plaintiff may not, as he has attempted to do here, submit affidavits during the summary judgment stage that directly contradict his previous statements and admissions. See Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999) (noting that courts have held with "virtual unanimity" that a party "cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity").

16

number of other precautions that are intended to minimize and eliminate the transfer of inmate germs, including using fresh towels and sheets to protect the headrest for each patron and using sanitary paper neck strips. (Id.) Finally, the barbershop abides by a policy of refusing to service patrons with open lesions on their scalp, face, or neck area. (Id.) Plaintiff makes no showing of any diseases having been spread through the prison barbershop, either to himself or to any other inmate. In light of the above evidence, the Court concludes that Plaintiff has failed to establish that his being required to undergo a weekly clipper shave at the JSP barbershop subjected him to a substantial risk of serious harm such that he was denied the "minimal civilized measure of life's necessities." See Farmer, 511 U.S. at 834. Therefore, he has failed to meet the objective prong of his Eighth Amendment claim.

Plaintiff is likewise unable to satisfy the subjective prong, as he cannot show deliberate indifference on the part of Defendants Morales or Jones. Although Defendant Morales has a passing familiarity with the barbershop, in that he has knowledge of the SOPs governing it and makes daily walkthrough inspections to ensure compliance with those SOPs, he does not directly oversee it. (Morales Aff. ¶¶ 10-13.) Plaintiff offers no evidence to show that Defendant Morales was aware of any excessive risk to Plaintiff that he then disregarded, and instead merely appears to attempt to hold him generally responsible for the prison policy denying razors to mental health inmates and requiring that they instead be shaved with clippers.[9] (Doc. no. 17, p. 7.) Defendant Morales asserts in his affidavit that,

---

[9]To the extent that Plaintiff attempts to hold Defendants Morales and Jones responsible for the actions of lower-level prison officials by virtue of their supervisory positions, he is barred from doing so by the doctrine of *respondeat superior*, as explained more fully infra Part III.B.3.

to the best of his knowledge, the SOPs regarding the barbershop are followed by the Deputy Wardens, staff, and inmates, and that he has no knowledge of any violations during Plaintiff's incarceration. (Morales Aff. ¶ 14.) Defendant Jones has no involvement with the prison barbershop system, but also asserts that he has no knowledge of any unsanitary conditions in the barbershop area during Plaintiff's incarceration. (Jones Aff. ¶ 9.) Furthermore, given that Plaintiff has never contracted any sort of disease from the barbershop facilities or equipment, and that there has never been any sort of outbreak of a communicable disease attributed to the barbershop (see generally Powel Aff. & Ex. F), Plaintiff has not established that Defendant Morales or Defendant Jones would have had any reason to be aware of any excessive risk to Plaintiff. Thus, given that Plaintiff has failed to establish that Defendants demonstrated a conscious disregard of a serious and imminent risk, he has also failed to satisfy the subjective prong of his Eight Amendment claim concerning the barbershop procedures. Farmer, 511 U.S. at 835-39; Adams 61 F.3d at 1543.

In sum, Plaintiff can satisfy neither the objective nor subjective elements required for him to prevail on his § 1983 barbershop claim against Defendants Morales and Jones. Therefore, the Court concludes that Plaintiff has failed to meet his burden of showing a genuine dispute of material fact with respect to that claim and that Defendants Morales and Jones are entitled to judgment as a matter of law. Accordingly, Defendants' motion for summary judgment should be granted as to Plaintiff's barbershop claim.

### 2. Laundry Claim

The essence of Plaintiff's laundry claim is that the prison laundry procedures promote the transfer of disease and, in particular, staph infections, by permitting inmate laundry that

contains fecal matter and other bodily fluids to be washed together with unsoiled laundry, and that Defendants Morales, Jones, and Toby acted with deliberate indifference to his health and safety by subjecting him to a heightened risk of such infections. (Doc. no. 17, p. 10.) In support of his argument, Plaintiff initially asserted in his amended complaint that he contracted staph infections twice as a result of the laundry procedures (id.); however, after being confronted with JSP medical records indicating otherwise (see Powel Aff.¶ 5 & Ex. F, pp. 8-11), Plaintiff now simply contends that he had a lesion on his nose and that a lesion is generally a type of a skin disease (doc. no. 88, p. 4).

Plaintiff's claim concerning the prison laundry fails for similar reasons as does his claim concerning the prison barbershop. First, in terms of the objective component of the requirements for an Eighth Amendment claim for deliberate indifference to health or safety under § 1983, Plaintiff fails to show that any of the named Defendants subjected to him to a substantial risk of serious harm as a result of the prison laundry procedures. Farmer, 511 U.S. at 834. His assertions concerning soiled laundry being mixed with unsoiled laundry are conclusory and not based on any actual personal knowledge, as are his attempts to connect that alleged practice with any sort of injury or risk of injury to himself. (Doc. no. 17, p. 10.) Pursuant to Rule 36(a)(3), it is admitted that Plaintiff has never worked as a laundry orderly or otherwise handled inmate laundry and that he has never witnessed inmate laundry that was soiled with fecal matter being placed into a washing machine with other inmate laundry. (See doc. no. 73-9, p. 3.) Moreover, it is also admitted pursuant to Rule 36(a)(3) that Plaintiff has never been diagnosed with a staph infection while incarcerated at JSP (id.), a fact that is substantiated by JSP's medical records, which show that, despite Plaintiff's

allegations to the contrary, he has never, in fact, contracted a single staph infection or any other serious communicable disease while at JSP  (see Powel Aff.¶ 5 & Ex. F pp. 8-11).

Moreover, just as it does for the barbershop, JSP has in place various safeguards that are intended to eliminate the transfer of disease between inmates.  (See generally Clark Aff. & Ex. D, pp. 10-12.)  Among those safeguards, which include the use of bleach and high water temperatures, are policies that are specifically intended to appropriately sanitize clothing that has been soiled with fecal matter and other fluids; soiled clothing, for instance, is placed into a separate, water-soluble bag that dissolves at the appropriate temperature to indicate that the clothing has been properly sanitized.  (Id.)  Although, as noted supra, Part I.B., Plaintiff has submitted three affidavits given by prisoners who have worked in the JSP laundry room and who state that the procedures are not always followed, those affidavits do not connect any failure to stringently abide by the SOPs to any sort of serious health risk or actual injury.  Each inmate points to various procedural failings or deficiencies in the laundry system:  inmate Coleman states that he was instructed not to wash clothes for over ten minutes and that soap and bleach were never used in the washing machines (doc. no. 81-2, p. 11); inmate Porter states that washing cycles were abbreviated and washers were overloaded (id. at 12); and inmate Dunson states that he was never issued a biodegradable "break-away" bag per the laundry SOPs (id. at 34).  Crucially, however, outside of inmate Coleman's one perfunctory and unsupported statement that the procedures "caused health problems to inmates" (id. at 11), none of the three inmates makes any attempt to connect the laundry procedures to inmate staph infections or other health issues, much less to Plaintiff's own alleged injuries.  Without any such connection, the described procedural failings – even

20

if completely true – do not demonstrate a substantial risk of serious harm. In terms of the objective prong, Plaintiff therefore fails to establish that, by using the prison laundry service, he was "incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834.

Plaintiff also fails to satisfy the subjective prong for his laundry claim, in that he fails to establish that any of the named Defendants were aware of a substantial risk to Plaintiff's health and acted with deliberate indifference towards it. Farmer, 511 U.S. at 833-34. Defendant Morales has limited involvement with the prison laundry service, in that he conducts daily walkthrough inspections but does not directly oversee the area, and Defendants Jones and Toby have no involvement with the laundry service. (Morales Aff. ¶ 12; Jones Aff. ¶ 5; see generally Toby Aff.) Defendants Morales and Jones profess that they have no knowledge of any violations of the SOPs that govern the laundry service or any otherwise unsanitary practices (Morales Aff. ¶ 14; Jones Aff. ¶ 9), whereas Defendant Toby, having no direct connection to or interaction with the laundry service, accordingly makes no comment concerning it.[10] (See generally Toby Aff.) In fact, although Plaintiff provides documents that are apparently intended to demonstrate that Defendants acted with deliberate indifference by failing to ensure that the prison laundry service fully dried inmate laundry, those same documents show that, when notified that laundry was being returned to prisoners wet, prison officials diagnosed the problem as the result of prisoners over-stuffing their

_____

[10]As with Plaintiff's claim concerning the barbershop, to the extent that he attempts to hold Defendants Morales, Jones, and Toby responsible for the actions of other prison employees by virtue of their supervisory positions, he is barred from doing so. See infra Part III.B.3.

laundry bags, and that the officials, including Defendant Toby, accordingly attempted to address the problem by directing that prisoners not do so. (See doc. no. 81, p. 6; doc. no. 81-1, pp. 21, 24.) Again, the most that Plaintiff establishes by such a showing is that Defendants might have been aware that laundry was sometimes returned wet and that they took steps to correct the problem, *not* that Defendants were aware of any actual serious risk to the health and safety of the prisoners to which they then acted with deliberate indifference.[11] Farmer, 511 U.S. at 833-34.

Furthermore, to the extent that Plaintiff argues that his alleged multiple staph infections that he attributes to the laundry service should have put Defendants on notice of a substantial health risk, that argument necessarily fails, since Plaintiff has *never* contracted a staph infection while incarcerated at JSP. (See Powel Aff. ¶ 5.) Plaintiff's attempts to connect the staph infections of the prison population at large to the laundry service are similarly unavailing, in that he provides no evidence that whatever staph infections might

---

[11]Notably, the affidavits given by inmates Porter and Dunson, despite asserting that Defendant Morales was notified of problems with the laundry service on numerous occasions, fail to establish that Defendant Morales was aware of any serious risk to the health and safety of the prisoner population or Plaintiff. As explained above, the affidavits fail to establish that the procedural deficiencies described resulted in any actual risk of harm, rendering any "awareness" of problems on the part of Defendant Morales meaningless with respect to Plaintiff's claims of deliberate indifference; this is especially true considering the lack of significant spikes or "outbreaks" in cases of staph infection prison-wide – or in the mental health dorms – that can be attributed to prison laundry procedures. (See Morris Aff. ¶ 11.) In other words, the affidavits, even if they do indicate that Defendant Morales was to some extent aware that laundry procedures were not always followed correctly, do not demonstrate that Defendant Morales was aware of any serious and imminent risk to which he then acted with conscious disregard. See Farmer, 511 U.S. at 835-39.

exist are the result of the laundry service.[12]   Since Plaintiff thus fails to establish that

Defendants consciously disregarded a serious and imminent risk of harm related to the

laundry procedures, Plaintiff fails to satisfy the subjective prong of his Eighth Amendment

claim concerning the laundry service. Farmer, 511 U.S. at 835-39; Adams 61 F.3d at 1543.

In sum, Plaintiff can satisfy neither the objective nor subjective elements required for

him to prevail on his § 1983 laundry claim against Defendants Morales, Jones, and Toby.

Therefore, the Court concludes that Plaintiff has failed to meet his burden of showing a

genuine dispute of material fact with respect to that claim and that Defendants Morales,

Jones, and Toby are entitled to judgment as a matter of law.  Accordingly, Defendants'

motion for summary judgment should be granted as to Plaintiff's laundry claim as well.

### 3.      Supervisory Liability

To the extent that Plaintiff attempts to hold Defendants responsible for the actions

of their subordinates, those claims fail. "Supervisory officials are not liable under § 1983 for

the unconstitutional acts of their subordinates on the basis of *respondeat superior* or

vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal

quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658,

691 & 694 n.58 (1978). To hold a supervisory official liable, Plaintiff must demonstrate that

either (1) the supervisor actually participated in the alleged constitutional violation, or (2)

there is a causal connection between the actions of the supervisor and the alleged

constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667,

---

[12]Moreover, JSP has not recently had any unusual levels of staph infections, much less significant spikes or "outbreaks" prison-wide or in the mental health dorms that can be attributed to prison laundry procedures. (Morris Aff. ¶ 11.)

671 (11th Cir. 1990)).

As already discussed at length above, Plaintiff has failed to demonstrate that any of the named Defendants should be held directly liable for any of his alleged injuries. However, Plaintiff also fails to allege a "causal connection" between these Defendants and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[13] puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Here, especially given that there has never been an outbreak of staph infection or any other communicable disease attributable to either the barbershop or the laundry service (see Powel Aff. ¶ 12), Plaintiff has failed to demonstrate that Defendants were on notice of a need to correct any alleged

---

[13]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

deprivation.[14] Additionally, Plaintiff has made no showing that any Defendant directed his or her subordinates to act unlawfully. Thus, Plaintiff has not made the necessary showing with respect to Defendants.[15]

## III. CONCLUSION

In sum, the Court **REPORTS AND RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** (doc. no. 73), that a final judgment be **ENTERED** in favor of Defendants, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 30th day of November, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[14]As discussed supra Part III.B.2, Defendant Morales's awareness of a general failure to comply with certain laundry procedures is insufficient to establish liability: inmates Porter and Dunson fail in their affidavits to connect any such lapses in procedure to an actual risk of harm to Plaintiff or the prison population. That being the case, those deficiencies are far from exemplifying the sort of "unlawful" behavior on the part of Defendant Morales's subordinates that might give rise to supervisory liability. Cottone, 326 F.3d at 1360.

[15]In light of the Court's conclusion that Defendants are entitled to summary judgment for the reasons set forth above, it is unnecessary to address the merits of Defendants' remaining arguments concerning qualified immunity and injunctive or monetary relief.